United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD F GREENSPAN,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>PAUL HASTINGS JANOFSKY & WALKER LLP,<br><br>　　　　Defendant.<br>_____/ | No. C 12-01148 CRB<br><br>**ORDER DENYING MOTION TO WITHDRAW THE REFERENCE** |

　　　　This is a piece of the Brobeck bankruptcy that Defendant Paul Hastings ("Defendant") is valiantly trying to make seem as different as possible from the In re Heller Ehrman LLP bankruptcy. 464 B.R. 348 (2011). The Court finds no serious points of distinguishment between the two cases, and thus, DENIES the motion to withdraw the reference.

**I.　FACTUAL BACKGROUND**

　　　　According to the Trustee ("Plaintiff"), Brobeck was a prominent national law firm with a thriving technology practice. Lee Decl. (dkt. 15) Ex. I ("Compl.") ¶ 10. However, in 2003, the Brobeck partners voted to dissolve as a result of business setbacks and failed merger talks. The partners adopted an Amended and Restated Partnership Agreement (the "Final Partnership Agreement"). Id. ¶ 16.

　　　　Brobeck's partners relinquished any mutual rights they may have had to account for so-called "unfinished business." Section 9(e) of the Final Partnership Agreement provided, among other things, that the firm and its partners mutually waived any rights and claims to

"unfinished business" under Jewel v. Boxer or the Revised Uniform Partnership Act. It provided:

> [N]either the Partners nor the Partnership shall have any claim or entitlement to clients, cases or matters ongoing at the time of the dissolution of the Partnership other than the entitlement for collections of amounts due for work performed by the Partners and other Partnership personnel prior to their departure from the Partnership. The provisions of this Section 9(e) are intended to expressly waive, opt out of and be in lieu of any rights any Partner or the Partnership may have to "unfinished business" of the Partnership, as that term is defined in Jewel v. Boxer, or as otherwise might be provided in the absence of this provision though interpretation or application of the California Revised Uniform Partnership Act.

Compl. ¶ 19. Some Brobeck partners left Brobeck and joined Paul Hastings. Some clients of those partners decided to retain Paul Hastings to represent them after Brobeck dissolved.

On September 17, 2003, certain creditors of Brobeck filed an involuntary bankruptcy petition against Brobeck under Chapter 7 of the Bankruptcy Code. Compl. ¶ 21. The Court entered an order for relief with respect to that petition on October 14, 2003, and the Trustee was certified shortly thereafter. Id. ¶¶ 21-22.

The Trustee launched a series of adversary proceedings against former Brobeck partners and the firms who took them on, including Paul Hastings. The Trustee, Plaintiff in this action, and the Defendants are parties to a Tolling Agreement, dated August 24, 2005 (the "Firm Tolling Agreement"), pursuant to which the parties agreed to toll any and all applicable statutes, contractual and/or equitable time-based requirements so as to extend the time for notice, presentment and/or filing of any and all "Jewel Claims" (as defined in the Firm Tolling Agreement, and consisting of claims of the type stated in the Complaint) that Plaintiff, Brobeck, Brobeck's chapter 7 estate and their predecessors, successors and assigns may have, to provide for a waiver of any defense to the Jewel Claims arising thereunder. Compl. ¶ 50. Under the Firm Tolling Agreement Plaintiff agreed not to commence litigation against the Defendants relating to the Jewel Claims without first providing at least fifteen days written notice to counsel for Defendants of withdrawal from the Tolling Agreement. Id. ¶ 52. By letter dated November 14, 2011, Plaintiff provided to counsel for the Defendants such written notice of his withdrawal from the Tolling Agreements. Id. ¶ 53.

2

On December 19, 2011, Plaintiff filed a Complaint against the Paul Hastings Defendants. The Complaint alleges that: (i) the so-called <u>Jewel</u> waiver constituted a fraudulent conveyance under federal and state law; and (ii) Paul Hastings and certain former Brobeck partners it hired received unspecified value as a result of "unfinished business" transferred by the <u>Jewel</u> wavier. The Trustee requests the return of the value of the "unfinished business" it alleges Defendants' received as a result of the <u>Jewel</u> waiver.

The Defendants than filed a Motion to Withdraw the Reference. Dkt. 1. Bankruptcy Judge Montali filed a Recommendation Regarding the Motion to Withdraw the Reference. Dkt. 1-7. Judge Montali noted the similarity between the underlying issues in this case and the <u>Heller</u> bankruptcy, and recommended that the adversary proceeding remain before him. Recommendation at 4. Judge Montali stated that he had the background with the Jewel waiver issues, the familiarity with the now over eight-year old Brobeck bankruptcy, and the time and docket availability to keep the case. <u>Id.</u>

## II. LEGAL STANDARD

The Northern District of California's Local Rules require that all cases and proceedings "related to" a bankruptcy case be referred to a bankruptcy court. B.L.R. 5011-1(a); <u>see also</u> 28 U.S.C. § 157(a). The court "may withdraw in whole or in part, any case proceeding referred, on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. § 157(d). The Defendants here argue the Court must withdraw the reference because the Bankruptcy Court no longer has jurisdiction to hear the case under the statute (mandatory withdrawal), or, in the alternative, the Court should exercise its discretion to withdraw the reference (permissive withdrawal).

As to permissive withdrawal, the Ninth Circuit has held that a district court should consider several factors, including "the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, the prevention of forum shopping, and other related factors" in the exercise of its discretion. <u>Sec. Farms v. Int'l. Bhd. of Teamsters (In re Security Farms)</u>, 124 F.3d 999, 1008 (9th Cir. 1997).

3

Section 157(d) also provides that the "district court shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." The substantial and material consideration of federal law other than the Bankruptcy code must be "necessary for the resolution of a case or proceeding." In re Molina, 2010 U.S. Dist. LEXIS 97667, at *10-11 (N.D. Cal. Sept. 2, 2010).

The party seeking withdrawal of the reference bears the burden of showing that the reference should be withdrawn. Carmel v. Galam (In re Larry's Apartment, LLC), 210 B.R. 469, 472 (Bankr. D. Ariz. 1997).

## III. DISCUSSION

The Defendant makes three arguments in support of their request to withdraw the reference. First, Defendant argues that the Court must withdraw the reference because the Bankruptcy Court cannot finally determine or hold a jury trial on Plaintiff's fraudulent conveyance claims. Second, Defendant argues that the Court should exercise its discretion to withdraw the reference now. Third, Defendant argues that "constitutional issues" mandate withdrawal of the reference under Section 157(d). The first two arguments are essentially the same as those brought by the Defendant in the Heller case, and thus, have previously been decided by this Court. The third is a new argument to get to the same outcome, which the Court finds unpersuasive.

### A. Mandatory Withdrawal Due to Stern

Defendant reiterates the arguments made in the Heller case that the Supreme Court's decision in Stern v. Marshall, 131 S. Ct. 2594, 2613 (2011), requires the Court to withdraw the reference at this time because the bankruptcy court no longer has authority to finally adjudicate the issue. Mot. at 17-20. This Court has already decided that the Stern decision

4

1 does not mandate withdrawal of the reference.[1] 464 B.R. 348, 355-57. Thus, the Court finds
2 again that <u>Stern</u> does not require mandatory withdrawal of the reference.[2]

### B. Permissive Withdrawal Due to <u>Stern</u>

Defendant then argues that because the bankruptcy court cannot determine the issue of the fraudulent transfers with finality, this Court should use its permissive authority to withdraw the reference now. The arguments Defendant raises in its Motion reflect essentially the same arguments raised in the <u>Heller</u> case, and as with <u>Heller</u>, the Court finds permissive withdrawal at this time is not necessary. <u>See</u> 464 B.R. at 357-361.

Defendant spends much of the Reply attempting to demonstrate that this case is not analogous to the <u>Heller</u> case. First, it argues that the basis of the motion is not <u>Stern</u>, but rather the question of who owns clients' business under California law, and whether withdrawal of those claims is mandatory under Section 157(d). The Court discusses the issue of mandatory withdrawal below.

Defendant then argues that the facts in this case are also different than in the <u>Heller</u> case because this case involves only one law firm in a bankruptcy case that has gone on for over a decade, and raises new and dispositive legal issues. Reply at 3. These are not serious distinguishing facts. First, at the time the <u>Heller</u> Order was issued, it only involved four Defendant. 464 B.R. at 350 n.1. Second, while the Heller bankruptcy has not gone on as long, it has still gone on for several years. Moreover, while not framed in the same language, the <u>Heller</u> case acknowledged that the claims rested on unsettled questions of California property and partnership law. 464 B.R. at 357-58. Thus, the cases are not truly factually distinguishable.

---

[1] While Defendant point out that the Seventh Circuit has since taken a contrary view, <u>In re Ortiz</u>, 665 F.3d 906, 915 (7th Cir. 2011), the Court does not view this such that withdrawal is now mandatory pursuant to <u>Stern</u>.

[2] As discussed in <u>Heller</u>, the Court is aware that the Ninth Circuit has asked for amicus briefing addressing this issue, and the parties here are also free to renew this motion at a later date based upon the ultimate resolution of that case. <u>See</u> <u>Executive Benefits Ins. Agency v. Arkison (In re Bellingham Ins. Agency, Inc.)</u>, No. 11-35162, 2011 WL 5307852, at *1 (9th Cir. Nov. 4, 2011).

United States District Court
For the Northern District of California

1    Defendant then spends several pages of the reply pointing out the important legal
2 issues that it thinks Judge Montali decided incorrectly previously in the Brobeck litigation.
3 While Defendant fleshes these out in more detail, they are essentially the same concerns with
4 the way Judge Montali decided the <u>Jewel</u> waiver issue that the Defendant in <u>Heller</u> pointed to
5 as supporting early withdrawal of the reference in that case. Defendant clearly disagrees
6 with the way that Judge Montali has decided this issue previously, and want a review of that
7 decision now. Still, this is the same situation as in the <u>Heller</u> case.[3]

8    Thus, for all the reasons stated in <u>Heller</u>, the Court declines to exercise permissive
9 withdrawal at this point.

### C. Mandatory Withdrawal pursuant to Section 157(d)

11   Defendant argues that this Court should withdraw the reference pursuant to Section
12 157(d) because the Complaint requires substantial and material consideration of non-
13 bankruptcy federal law. Defendant argues this is so because the Bankruptcy Court's prior
14 ruling on the issue of <u>Jewel</u> waivers in the Brobeck bankruptcy threatens freedom of
15 association, the right to counsel, and the right to practice one's profession – rights Defendant
16 argues are protected by the Constitution, and thus, non-bankruptcy federal law.

17   Under the law of the Ninth Circuit, Section 157(d) "mandates withdrawal of reference
18 where there are 'substantial and material questions of federal law' . . . ." <u>In re Van Upp</u>, Nos.
19 10-1934, 10-204, 10-1149, 10-2559, 201 WL 5387609, at *1 (N.D. Cal. Dec. 21, 2010)
20 (quoting <u>Security Farms v. Int'l Broth of Teamsters, Chauffers, Warehousemen & Helpers</u>,
21 124 F.3d 999, 1008 (9th Cir. 1997)). It is not sufficient that non-Bankruptcy Code federal
22 statutes will simply be considered but that substantial and material consideration of these
23 laws is necessary for the resolution of the proceeding. <u>In re Ionosphere Clubs, Inc.</u>, 922 F.2d
24 984, 995 (2d Cir. 1990). The issues must be "significant open and unresolved" and must
25 involve more than "mere application of federal law." <u>In re Vicars Ins. Agency, Inc.</u>, 96 F.3d

---

[3] A district court has since permissively withdrawn the reference in the Coudert Brothers bankruptcy case, in an order that distinguishes our <u>Heller</u> opinion. <u>See</u> Lee Decl. Ex. G (<u>In re Coudert Bros.</u>, No. 11-6337, Dec. 23, 2011). This opinion, while coming to a different conclusion than this Court in <u>Heller</u>, does not cause the Court to come to an opposite conclusion in this case.

United States District Court
For the Northern District of California

949, 954 (7th Cir. 1996). A district court must make an "affirmative determination" that such consideration will be required before granting withdrawal. In re Ionosphere Clubs, Inc., 103 B.R. 416, 419 (S.D.N.Y. 1989) (quoting In re White Motor, 43 B.R. 693, 701 (D. Ohio 1984). See also In re Molina, 2010 U.S. Dist. LEXIS 97667, at *10-11 (N.D. Cal. Sept. 2, 2010) (the substantial and material consideration of federal law other than the Bankruptcy Code must be "necessary for the resolution of a case or proceeding").

Congress intended the mandatory withdrawal provision to be construed narrowly so as not to create an "escape hatch" by which most bankruptcy matters could easily be removed to the district court. In re Vicars Ins. Agency, Inc., 96 F.3d 949, 952 (7th Cir. 1996). "[S]ending every proceeding that required passing 'consideration' of non-bankruptcy law back to the district court would 'eviscerate much of the work of the bankruptcy courts'." Id. (quoting In re Adelphi Institute, Inc., 112 B.R. 534, 536 (S.D.N.Y.1990)); see also In re American Freight System, Inc., 150 B.R. 790, 793 (D. Kan. 1993) ("consideration of the non-Code law must entail more than its routine application to the facts"). As a result, the majority of courts require that "the issues in question require more than the mere application of well-settled or 'hornbook' non-bankruptcy law; 'significant interpretation of the non-Code statute must be required.'" In re Vicars Ins. Agency, Inc., 96 F.3d at 953; see also Lifemark Hospitals v. Liljeberg Enterprises, Inc., 161 B.R. 21, 24 (E.D. La.1993).

In addition, the federal law at issue must regulate "organizations or activities affecting interstate commerce." 28 U.S.C. § 157(d). This standard is not met simply by virtue of alleging a constitutional issue. "An action alleging a violation of the federal constitution does not rely, as a source of authority, upon the Commerce Clause. If Congress intended all actions involving constitutional issues to be subject to mandatory withdrawal, it could have so provided. It did not. Instead, Congress in § 157(d)'s mandatory withdrawal provision requires district courts to withdraw the reference only for those cases involving the interpretation of federal laws "regulating organizations or activities affecting interstate commerce." In re Roman Catholic Bishops of San Diego, 2007 WL 2406899, at *3 (S.D. Cal. Aug. 20, 2007).

1 Defendant argues that the constitutional issues they raise are substantial, and 2 determination of the issues require significant interpretation of those federal issues. It bases 3 this on two arguments: (1) the bankruptcy court's prior ruling threatens freedom of 4 association and the right to counsel, and (2) the prior ruling threatens the right to practice 5 one's profession.

### 1. Freedom of Association and Right to Counsel

Judge Montali ruled in prior Brobeck litigation that new law firms would be liable as immediate transferees under a fraudulent transfer claim despite a Jewel waiver in Brobeck's amended partnership agreement. Greenspan v. Orrick, Herrington & Sutcliffe (In re Brobeck Phleger & Harrison LLP), 408 B.R. 318, 346-48 (Bankr. N.D. Cal. 2009).

Defendant argues that a client's right to associate with the counsel of his or her choice enjoys constitutional stature, being protected by the First Amendment, and for criminal Defendant, the Sixth Amendment, citing NAACP v. Button, 371 U.S. 415 (1963) (Virginia statute violated First Amendment when Virginia Supreme Court of Appeals construed it to proscribe advising prospective litigants to seek assistance of particular attorneys). Defendant argues Judge Montali's previous Brobeck ruling "foists upon [] clients the burden to persuade firms to risk uncompensated work if they employ those attorneys who could most easily and at lowest cost complete their in-process matters." Mot. at 15. Defendant argues that requiring the lawyers most knowledgeable about the client's case "to work for free and their new firm to pay as damages all profits from that work to the insolvent firm, imposes a 'tax' on the lawyer's new firm, inhibiting its effective practice of law and burdening commerce." Id. Thus, Defendant argues the fraudulent transfer issue requires interpretation of the constitutional right to association and counsel in a way that affects interstate commerce, and thus, satisfies the requirements of Section 157(d).

Plaintiff argues that the dire consequences set out by Defendant can be easily avoided. Plaintiff points out that Judge Montali upheld the Jewel waiver as valid, but only found the transfers fraudulent because the waiver was made on the eve of the firm's dissolution. 408

8

B.R. 318, 334 n.21. Plaintiff argues that if a problem is easily fixed, "it hardly requires material and substantial consideration of unresolved constitutional law." Opp'n at 10.

Defendant respond that the idea of simply putting a Jewel waiver into place prior to a firm's insolvency is inadequate as an "easy fix" because it is in the sole control of the bankrupt firm, not of the client, or of such a party as the Defendant, and thus, does not actually ease the issue. Reply at 10-11. While partially true, this is also an overstatement, as many of the partners (arguably those with the largest stake in not being saddled with large amounts of non-profitable work in case they need to transfer to another firm) do have the power to institute a Jewel waiver when their present firm is on strong financial ground.

Yet, this argument is tangential to the central issue of a Section 157(d) inquiry. The relevant issue is whether serious determination of unresolved issues of federal law is actually required. For example, in Educational Credit Management Corp. v. Barnes, 259 B.R. 328, 330 (S.D. Ind. 2001), the district court withdrew the reference when a party directly challenged the constitutionality of a federal regulation. The situation here, in contrast, does not rise to that level. Rather, it involves at most the routine application of the federal law regarding the right to association and right to counsel. Defendant does not point to a novel application of these constitutional principles at issue here. In fact, they state that there is "simply no doubt" that the constitutional right to association and counsel protects individuals. Reply at 10 n.9. This underscores the issue that the alleged constitutional rights involved are not "significant[,] open and unresolved" and do not necessarily involve more than "mere application of federal law." In re Vicars Ins. Agency, Inc., 96 F.3d at 954. This is not to say that the state law issues may be unresolved, but that is not the standard of Section 157(d). Moreover, that the potential resolution of an issue in this action may have some impact on the way clients associate with counsel does not necessarily rise to the required level of a constitutional concern.

### 2. Right to Practice One's Profession

Defendant then argues that Judge Montali's prior decision in the Brobeck case

9

1  threatens attorneys' right to practice their profession. Defendant argues that attorneys have
2  the right, protected under the Fourteenth Amendment, to practice their profession, citing
3  Keker v. Procunier, 398 F. Supp. 756, 760 (E.D. Cal. 1975) (finding attorneys afforded
4  constitutional protection to practice their profession), and Wounded Knee Legal
5  Defense/Offense Committee v. Federal Bureau of Investigation, 507 F.2d 1281, 1284 (8th
6  Cir. 1974).[4]

7  Defendant argues that Judge Montali's prior decision selectively burdens partners who
8  seek employment at new firms handling matters that clients have transitioned from the
9  partner's former, now-defunct, firm because the partners risk uncompensated labor.
10  Defendant argues that if Judge Montali's ruling holds, it will effectively bar solvent firms
11  that wish to hire the bankrupt firm's former partners from representing the bankrupt firm's
12  former clients on their in-process matters – and that this outcome infringes on the attorneys'
13  Fourteenth Amendment right to practice their profession. Defendant then argue that this
14  outcome imposes a tax on bankrupt firms' former partners, which impedes their mobility, and
15  thus, burdens commerce. Mot. at 15-16.

16  Plaintiff argues in response that these dire consequences can be avoided by the
17  method set out above – by healthy firms including Jewel waivers in their partnership
18  agreements. Moreover, Plaintiff argues that lawyers subject to Jewel obligations are not
19  denied to right to practice their profession or make lateral moves, only that they may be less
20  lucrative for a certain period of time.

21  Most importantly, the case law does not support such a constitutional right in the first
22  place, given the history following Keker v. Procunier. In Conn v. Gabbert, 526 U.S. 286,
23  292 (1999), the Supreme Court held that executing a search warrant while an attorney's
24  client was testifying did not violate the Fourteenth Amendment. It found that the cases relied

---

[4] Wounded Knee is less helpful than Defendant argues. There, the Court held that attorneys had standing to challenge acts that interfere with his professional obligation to his client "and thereby, through the lawyer, invades the client's constitutional right to counsel." 507 F.2d at 1284. This is not the same point that Defendant puts forth above.

10

upon by the Ninth Circuit to find such a right all dealt "with a complete prohibition of the right to engage in a calling, and not the sort of brief interruption which occurred here." Id.

The Ninth Circuit and district courts in this circuit have interpreted this language to require something akin to a complete prohibition on practicing one's profession to state a constitutional claim. In Lowry v. Barnhart, 329 F.3d 1019, 1023 (9th Cir. 2003), the Ninth Circuit, discussing Conn, stated, "The Supreme Court was not impressed by this conclusion [that the search in Conn was a violation of the Fourteenth Amendment], observing that precedent provided only 'scant metaphysical support.' It indicated that 'a complete prohibition of the right to engage in a calling' might implicate due process, but that 'the sort of brief interruption which occurred' in that case did not." (citations omitted). The Ninth Circuit continued that an administrative law judge's alleged bias against the plaintiff practitioner "does not share the brevity of the interference in Gabbert, but it is similar in severity in that both fall far short of a complete prohibition." Id. The Ninth Circuit continued that "[t]his indirect and incidental burden on professional practice is far too removed from a complete prohibition to support a due process claim." Id.

Thus, the Ninth Circuit has interpreted Conn strictly, and the district courts have followed suit. See, e.g., Denney v. Drug Enforcement Admin., 508 F. Supp. 2d 815, 835 (E.D. Cal. 2007) ("As in Gabbert and Lowry, this appears to fall short of a complete prohibition. Plaintiff has only alleged that he has had to turn away some patients, not that he has been completely precluded from the practice of medicine. Thus, it would appear that plaintiff has not identified a liberty interest protected by substantive due process."); Thompson v. City of Shasta Lake, 314 F. Supp. 2d 1017, 1028 (E.D. Cal. 2004) ("In Conn v. Gabbert, the Court found that an attorney who was served with and searched pursuant to a warrant while his client was testifying, was not deprived of his right to engage in his profession. The Court compared this 'brief interruption' of his profession with a complete prohibition, holding that the latter circumstances raised a due process claim, but the former did not. While the Supreme Court did not address intermediate circumstances, the Ninth Circuit has read Gabbert as requiring 'a complete prohibition' before a due process claim

11

may lie."); Tillotson v. Dumanis, 2012 WL 667046, at *X (S.D. Cal. Feb.28, 2012) ("The liberty component of the Fourteenth Amendment's Due Process Clause may be violated by 'a complete prohibition of the right to engage in a [professional] calling.' Conn v. Gabbert, 526 U.S. 286, 291–92(1999); Lowry v. Barnhart, 329 F.3d 1019, 1023 (9th Cir.2003).").

The district court in Thompson explicitly called into question the validity of Keker: "Prior to Gabbert, a judge of this court held that state officials violated an attorney's right to pursue his profession where prison regulations prohibited him from having the 'privacy and freedom from intrusion essential to the attorney-client relationship,' and such circumstances supported a claim under the Fourteenth Amendment. See Keker v. Procunier, 398 F. Supp. 756, 761 (E.D. Cal. 1975). The viability of Keker after Gabbert is uncertain, but need not be resolved." Thompson, 314 F. Supp. 2d at 1028 n.15.

Thus, while, Defendant argue that "complete prohibition" is not a prerequisite of unconstitutional impairment, the case law is clear that something at least analogous is required in this Circuit. Still, this Court's inquiry is tied to the standard under Section 157(d). To mandate removal, the constitutional question must need to be substantially and materially considered to resolve the underlying proceedings. In re Ionosphere Clubs, Inc., 922 F.2d 984, 995 (2d Cir. 1990). Given the Ninth Circuit's statement regarding Conn, and the interpretation of that statement in this Circuit, the Complaint does not raise any significant open and unresolved issue of federal law.

Essentially, Defendant are arguing that the way Judge Montali decided the fraudulent transfer issue earlier in the Brobeck bankruptcy, and thus, presumably how he would decide the same issue here, raises certain constitutional concerns. Defendant is not challenging anything that has yet happened in this case, or the constitutionality of any regulation regarding its conduct, but rather, saying that the way it thinks things will go may raise constitutional concerns. This does not meet the standard set out in Section 157(d). Any federal issues that may be implicated are not open and unresolved on their own.

Defendant also provide several pages of argument about why Judge Montali's previous decision was bad policy. This is not an appeal of Judge Montali's prior decision,

12

1 nor should such policy considerations be taken into consideration in the Section 157(d)

2 analysis (having nothing to do with the Section 157(d) requirements).

**IV. CONCLUSION**

For the foregoing reasons, the Court DENIES the motion to withdraw the reference.

**IT IS SO ORDERED.**

Dated: August 10, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE